**MAYER | BROWN**

January 16, 2024

**VIA ECF**

Hon. Andrew L. Carter Jr.
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

<div style="float:right">
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Henninger S. Bullock**
Partner
T: +1 212 506 2500
HBullock@mayerbrown.com
</div>

Re: *Adeia Guides Inc. et al. v. Shaw Cablesystems G.P. et al.*,
Case No.: 1-23-cv-08796-ALC
Request for Pre-Motion Conference

Dear Judge Carter:

We represent Defendants Shaw Cablesystems G.P. and Shaw Satellite G.P. (collectively, "Shaw") and write to request a pre-motion conference on Shaw's anticipated motion to dismiss the complaint filed by Plaintiffs Adeia Guides Inc., Adeia Media Solutions Inc., and Adeia Media Holdings LLC (collectively, "Adeia").

**A. Factual Background**

In April 2014, Adeia and Shaw entered into a license agreement (the "Agreement") which gave Shaw rights to ▮▮▮▮▮▮▮ interactive program guide patents ("IPG Patents") ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ for use on Shaw's cable and satellite television platforms.[1] (Compl. ¶ 1; Ex. A to Compl., 2014 Agreement at 4). The Agreement was amended twice: first, to bring mobile/online platforms within its scope, and later to extend its Term to December 31, 2025 and to add additional Adeia entities. (Ex. A to Compl.). As consideration for the license, Shaw agreed to pay royalties based on a formula set out in the Agreement. (*Id.* Amend. Two at Schedule B).

The Agreement also gave Shaw the right to terminate prior to the Term's expiration. Pursuant to Section 3.2, Shaw could terminate if ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (*Id.* 2014 Agreement at § 3.2). In relevant part, Adeia ▮▮▮▮▮▮▮ (*Id.* at § 7.2(d)). And pursuant to Section 3.3, Shaw could terminate ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (*Id.* at § 3.3) (emphasis added).

After Shaw merged with Rogers Communications Inc. ("Rogers") in 2023, Adeia requested that Shaw pay royalties for "additional [Rogers] subscribers". (Compl. ¶¶ 14-15). Shaw refused this request and formally terminated the Agreement pursuant to Sections 3.3 and 3.2. (*Id.* ¶ 16). In

---

[1] Interactive Program Guide, or "IPG," is the electronic program guide which allows viewers to access television program schedule information on their television screens.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England & Wales), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian law partnership).

Honorable Andrew L. Carter Jr.
January 16, 2024
Page 2

its termination letter (Ex. 1).,[2] Shaw explained that it had a basis to terminate pursuant to Section 3.3 ██████████████████████████████████████████████████████████████████████ Shaw also explained that it had the right to terminate pursuant to Section 3.2 because ████████████████████████████████████████████████████████████████ *Id.*

Adeia refused to acknowledge Shaw's termination of the Agreement, and the parties subsequently exchanged letters on the subject. Ultimately, Adeia commenced this litigation asserting claims for breach of contract and declaratory relief.

### B. Anticipated Motion to Dismiss

Shaw seeks permission to move to dismiss the complaint for failure to state a claim (Fed. R. Civ. P. 12(b)(6)). The basis for this anticipated motion is set out in more detail below.

#### 1. Breach of Contract

***First*, Adeia does not allege actual breach**. Where an agreement provides specific bases for termination, a plaintiff must allege that the defendant was not "entitled to avail itself of [those] termination provision[s]." (*See Jill Stuart (Asia) LLC v. Sanei Int'l Co.*, 548 F. App'x 20, 22 (2d Cir. 2013)). In other words, the plaintiff must allege that the "purported events [serving as a basis for termination] did not occur or were not material breaches." (*PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2021 WL 2582132, at *6 (S.D.N.Y. June 23, 2021)).

Overlooking this prerequisite, Adeia alleges in conclusory fashion that Shaw breached the Agreement by failing to report and pay for additional subscribers and by not paying royalties. (*See* Compl. ¶¶ 15-18). But Adeia *never* alleges facts demonstrating that Shaw's termination was improper. For example, as relevant to Section 3.3, Adeia fails to allege that: ██████████ ████████████████ Similarly, as relevant to Section 3.2, Adeia fails to allege that ████████ ████████████████████████████████████ Because Adeia does not allege any of these facts, its breach of contract claim fails as a matter of New York law.

***Second*, Shaw appropriately terminated the Agreement**. Even if Adeia had alleged the missing facts, its claims would still fail because Shaw properly terminated the Agreement pursuant

---

[2] Because Shaw's termination gave rise to Adeia's claims, and because Adeia relies on the termination letter (Ex. 1) in framing its complaint, this communication is "integral" to the complaint (*Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y. 2010)) and may be considered as part of the pleadings. *See, e.g.*, Compl. ¶ 16 (alleging Shaw claimed it was giving notice that the Agreement was being "terminated").

[3] *See* Request for Judicial Notice ("RJN"), Exs. 1-2, Ex. 3 n. 2, Ex. 4 n. 1.

[4] Indeed, Adeia does not even attempt to ████████████████████████████████████████ nor does Adeia attempt to allege that ████████████████████████████████████ Section 3.3.

to Sections 3.3 and 3.2. As a threshold matter, ███████████████████████████
████████████████████████████████████████████████ Section 3.3. (Ex. A to Compl., 2014 Agreement at § 3.3). ██████████ should be considered sufficiently material and fatal to the Agreement—████████████████████████████████████████████████████████
████████████████████████████ To hold otherwise would render Section 3.3 commercially unreasonable and meaningless.

████████ Similarly, ████████████████████████████████████████████████
████████████████████████████████████████ (*See* RJN, Ex. 5). ████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████ Further, ████████████████████████
████████████████████ is squarely contrary to U.S. patent policy and only reflects Adeia's unfair patent leverage. *See, e.g.*, *Kimble v. Marvel Entm't LLC*, 576 U.S. 446, 449 (2015) (upholding the 50-year-old rule from *Brulotte v. Thys Co.*, 379 U.S. 29 (1964) barring license agreements that continue after a patent expires).

**Third, Adeia does not allege sufficient facts for damages**. Adeia's scant allegations regarding damages "already in the millions of dollars" (Compl. ¶ 24) fail to include the "particular facts as to how [plaintiff] was damaged" that is required to state a breach of contract claim. *Int'l Bus. Machines Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011). Shaw's royalty obligations are premised on its subscribers ████████████████████████████████████
████████████████████████████ (Ex. A to Compl., Amend. Two at Schedule B), but Adeia never alleges that this, in fact, is the case.

**Fourth, Adeia has not alleged facts demonstrating that Shaw had an obligation to pay a higher license fee for additional Rogers subscribers.** Even if Adeia had properly alleged that Shaw's termination was improper, Adeia has no basis to argue that Shaw must pay royalties for Rogers' subscribers. The express language of the Agreement requires Shaw to pay license fees only in connection with its subscribers who are ████████████████████████████████████
████████████████████ (*Id.* 2014 Agreement at 1, 4; Amend. Two at Schedule B). The Agreement ████████████████████████████████████████████████████████████████████
████████████████████████████ (*Id.* 2014 Agreement at 1, 3). Accordingly, because any individual or location receiving services from Rogers is not a "subscriber" as defined in the Agreement, Shaw need not pay any license fees in connection with those individuals or locations.

2. **Declaratory Relief**

New York law bars claims for declaratory relief when it is duplicative of a breach of contract claim. *JMF Consulting Group II v. Beverage Mktg USA*, 948 N.Y.S.2d 314, 317 (2d Dep't

---

[5] To the extent Adeia argues that ████████████████████████████████████████
████████████████████████████ that interpretation is unfounded. Indeed, ████████
████████████████████████████████████████████████████████████████████████

Mayer Brown LLP

Honorable Andrew L. Carter Jr.
January 16, 2024
Page 4

2012). Adeia's declaratory relief claim plainly arises from the same facts and seeks the same damages as its breach of contract claim. The legal issues at play will be resolved by litigation of the contract claim, making the declaratory relief claim duplicative and ripe for dismissal. *Intellectual Capital Partner v. Inst. Credit Partners LLC*, 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009).

### C. Conclusion

Pursuant to Section II.A. of Your Honor's Individual Practice Rules, Shaw respectfully requests a pre-motion conference on these issues.

Respectfully submitted,

Henninger S. Bullock

cc:   Matt Ashley
      Ben Hattenbach