UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADEIA GUIDES INC.; ADEIA MEDIA SOLUTIONS INC.; and ADEIA MEDIA HOLDINGS LLC, <br><br> Plaintiffs-Counterclaim Defendants <br><br> -against- <br><br> SHAW CABLESYSTEMS G.P.; and SHAW SATELLITE G.P., <br><br> Defendants-Counterclaim Plaintiffs. | No. 1:23-cv-08796-ALC <br><br> **DEFENDANTS' ANSWER, DEFENSES, AND COUNTERCLAIMS** |

Defendants Shaw Cablesystems G.P. (n/k/a Shaw Cablesystems Inc.) ("Shaw Cable") and Shaw Satellite G.P. (n/k/a Shaw Satellite Services Inc.) ("Shaw Direct®") (collectively, "Shaw"), by and through their undersigned counsel, hereby submit the following Answer, Defenses, and Counterclaims (collectively, the "Answer") to the Complaint (ECF No. 1) filed by Adeia Guides Inc., Adeia Media Solutions Inc., and Adeia Media Holdings LLC (collectively, "Adeia").

In an Opinion and Order dated September 29, 2025 (the "Opinion and Order"), the Court denied Shaw's motion to dismiss Count I of the Complaint and granted Shaw's motion to dismiss Count II of the Complaint (ECF No. 66). In doing so, the Court construed Count I as alleging a breach of the Interactive Program Guide Patent License Agreement and its two amendments (all collectively referred to herein as the "IPG Agreement") seeking damages solely related to Shaw's failure to "report and pay royalties for additional subscribers due to the recent merger with Rogers" (*see* ECF No. 1 at ¶ 15).[1] *See* ECF No. 66 at 4 ("[T]he Court notes that Adeia does not bring the

---

[1] On April 3, 2023, Shaw's parent company merged with Rogers Communications Inc. ("Rogers") (hereinafter, the "Merger"). *See* Press Release, Rogers Communications Inc., Rogers Closes Transformative Merger with Shaw (Apr. 3, 2023), https://about.rogers.com/news-ideas/rogers-closes-transformative-merger-with-shaw/.

breach of contract claim based on Shaw's termination of the Agreement, only Shaw's failure to pay royalties for the Rogers subscribers."); *see also id.* at 4 ("In light of this, the permissibility of Shaw's termination is not relevant to the question before this Court: whether Adeia has adequately alleged Shaw breached the Agreement by failing to pay royalties for the new Rogers subscribers."); *see also id.* at 5 ("The only issue on which the parties disagree is whether Shaw was obligated to pay royalties for the Rogers subscribers, rendering Shaw's refusal and failure to do so a breach of the Agreement."); *see also id.* at 5 ("The viability of Adeia's claim then rests on whether it adequately alleged Shaw's obligations under the Agreement to encompass the Rogers subscribers."); *see also id.* at 6 ("Adeia's breach of contract claim will determine the scope of its entitlement to royalty payments for the Rogers subscribers under the Agreement…").

To the extent Adeia attempted to allege in the Complaint that Shaw breached the IPG Agreement by refusing to pay royalties for Subscribers who received services from Shaw and used technology and infrastructure owned and maintained by Shaw (the "Shaw Subscriber Allegations"),[2] either before or after the Merger, the Opinion and Order confirms that the Shaw Subscriber Allegations are not part of or relevant to the breach of contract claim that the Court has allowed to proceed. Therefore, no responsive pleading is required with respect to the Shaw Subscriber Allegations. To the extent any further response is required or Adeia otherwise attempts to advance the Shaw Subscriber Allegations, and for avoidance of doubt, Shaw expressly denies the Shaw Subscriber Allegations and reserves its rights to provide a full Answer to those allegations if and when they are properly advanced.

---

[2] The IPG Agreement defines "▆▆▆▆▆▆" in pertinent part, as "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." "▆▆▆▆▆" was expressly limited to include only ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* Ex. A at 3-4 to ECF No. 1.

Finally, the statements made in Shaw's Answer are based on its present knowledge, and Shaw reserves the right to revise, correct, amend, and/or supplement this Answer over the course of this proceeding. Unless expressly admitted, Shaw denies each and every allegation. To the extent any of the headings constitute allegations to which a response is required, Shaw further denies any and all allegations contained in those headings.

## NATURE OF THE CASE

1. Paragraph 1 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw admits that it entered into the IPG Agreement effective as of April 1, 2014. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw further denies the remaining allegations in Paragraph 1.

## THE PARTIES

2. Shaw lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2.

3. Shaw lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3.

4. Shaw lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

5. Shaw Cable admits that it is a corporation organized and existing under the laws of Alberta with its principal place of business at Suite 900, 630– 3rd Avenue S.W., Calgary, AB, T2P 4L4, Canada.

6. Shaw Direct® admits that it is a corporation organized and existing under the laws of Alberta with its principal place of business at Suite 900, 630– 3rd Avenue S.W., Calgary, AB, T2P 4L4, Canada.

## JURISDICTION AND VENUE

7. Paragraph 7 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw is not disputing the Court's personal jurisdiction at this time.

8. Paragraph 8 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw admits that Shaw Cable and Shaw Direct® are each citizens of the foreign state of Canada, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 8.

9. Paragraph 9 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw is not disputing venue at this time.

## FACTUAL BACKGROUND

10. Shaw admits that it entered into the IPG Agreement, effective as of April 1, 2014, and that the IPG Agreement was subsequently amended twice. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied.

11. The allegations contained in Paragraph 11 refer to the IPG Agreement. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw denies any remaining allegations contained in Paragraph 11.

12. The allegations contained in Paragraph 12 refer to the IPG Agreement. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation

4

of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw denies any remaining allegations contained in Paragraph 12.

13. Shaw admits that it paid royalties pursuant to the IPG Agreement from 2014 through April 2023.

14. Shaw admits that Rogers completed the Merger with Shaw Communications Inc. in April 2023. As part of that transaction, Shaw Cable and Shaw Direct® became indirect, wholly-owned subsidiaries of Rogers.

15. The allegations contained in Paragraph 15 seemingly refer to an unidentified "request[] that Shaw report and pay royalties" for purported additional subscribers due to the Merger. Any such request speaks for itself, and any characterization of such request by Adeia is expressly denied. Additionally, the allegations contained in Paragraph 15 refer to the IPG Agreement. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw further denies the remaining allegations in Paragraph 15.

16. The allegations contained in Paragraph 16 seemingly refer to an unidentified "refus[al]" and "notice" given by Shaw. Any such refusal or notice speak for themselves, and any characterization of such refusal or notice by Adeia is expressly denied. Shaw further denies the remaining allegations in Paragraph 16.

17. Shaw admits that after it formally refused Adeia's request for additional royalties and exercised its right to terminate the IPG Agreement by letter dated June 12, 2023, Shaw engaged in discussions with Adeia to attempt to resolve the dispute. Shaw denies the remaining allegations contained in Paragraph 17.

18. Paragraph 18 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw denies the allegations contained in Paragraph 18.

## COUNT I

### (Breach of Contract)

19. Shaw incorporates by reference its responses to each and every allegation contained above, as though fully set forth herein.

20. Paragraph 20 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw denies the allegations contained in Paragraph 20.

21. Shaw denies the allegations contained in Paragraph 21.

22. The allegations contained in Paragraph 22 refer to the IPG Agreement. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw further denies the remaining allegations in Paragraph 22.

23. The allegations contained in Paragraph 23 refer to the IPG Agreement. Shaw respectfully refers to the express language of the IPG Agreement for a full and accurate recitation of that agreement's contents, and any characterization of the IPG Agreement by Adeia is expressly denied. Shaw further denies the remaining allegations in Paragraph 23.

24. Paragraph 24 states conclusions of law as to which no responsive pleading is required. To the extent a response is required, Shaw denies the allegations contained in Paragraph 24.

## COUNT II

### (Declaratory Relief)

25.     Shaw incorporates by reference its responses to each and every allegation contained above, as though fully set forth herein.

26.     In the Opinion & Order, the Court dismissed Count II of the Complaint (ECF No. 66). Therefore, no responsive pleading is required. To the extent any response is necessary, Shaw denies the allegations contained in Paragraph 26.

27.     In the Opinion & Order, the Court dismissed Count II of the Complaint (ECF No. 66). Therefore, no responsive pleading is required. To the extent any response is necessary, Shaw denies the allegations contained in Paragraph 27.

## AFFIRMATIVE AND OTHER DEFENSES

Shaw asserts the following additional defenses and affirmative defenses. In asserting these defenses, Shaw does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden on Adeia. All such defenses do not constitute an admission of liability or that Adeia is entitled to any relief whatsoever.

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Adeia's claims are barred, in whole or in part, because of Adeia's own material breaches and failure to perform under the IPG Agreement.

## THIRD DEFENSE

Adeia's claims are barred, in whole or in part, because Adeia breached its implied duty of good faith and fair dealing.

### FOURTH DEFENSE

Adeia's claims are barred, in whole or in part, because Shaw lawfully and properly terminated the IPG Agreement.

### FIFTH DEFENSE

Adeia's claims are barred, in whole or in part, because Shaw acted at all times in accord with its contractual obligations, up to and including the lawful termination of the IPG Agreement.

### SIXTH DEFENSE

Adeia's claims are barred, in whole or in part, because Shaw's performance was excused or was not required due to the failure of a condition precedent, concurrent, or subsequent.

### SEVENTH DEFENSE

Adeia's claims are barred, in whole or in part, because the at-issue provisions of the IPG Agreement are ambiguous.

### EIGHTH DEFENSE

Adeia's claims are barred, in whole or in part, due to the doctrine of unclean hands, inequitable conduct, fraud, and/or fraudulent inducement.

### NINTH DEFENSE

Adeia's claims are barred, in whole or in part, due to economic duress or undue influence imposed upon Shaw by Adeia.

### TENTH DEFENSE

Adeia's claims are barred, in whole or in part, because Adeia obtained Shaw's consent to some or all of the contractual terms at issue through deceit and/or misrepresentation.

### ELEVENTH DEFENSE

Adeia's claims are barred, in whole or in part, due to circumvention of public policy.

## TWELFTH DEFENSE

Adeia's claims are barred, in whole or in part, by Adeia's failure to mitigate any alleged damages, which damages have been specifically denied by Shaw.

## THIRTEENTH DEFENSE

Adeia's claims are barred, in whole or in part, by commercial impracticability.

## FOURTEENTH DEFENSE

Adeia's claims are barred, in whole or in part, by frustration of purpose.

## FIFTEENTH DEFENSE

Adeia's claims are barred, in whole or in part, because Shaw was mistaken regarding the terms of the IPG Agreement and Adeia knew or had reason to know of Shaw's mistake.

## SIXTEENTH DEFENSE

Adeia's claims are barred, in whole or in part, because the parties were mistaken as to the terms of the IPG Agreement.

## SEVENTEENTH DEFENSE

Adeia's claims are barred, in whole or in part, by lack of consideration.

## EIGHTEENTH DEFENSE

Adeia's damages, if any, are subject to an offset or setoff based on the acts and wrongdoings of, and amounts owed by, Adeia to Shaw.

## RESERVATION OF RIGHTS

Shaw hereby reserves the right to supplement its Answer, Affirmative Defenses, and Counterclaims not asserted herein of which it may become aware through discovery or other investigation as may be appropriate at a later time with additional defenses that become available or apparent during the course of investigation, preparation or discovery, and to amend its pleadings accordingly.

## SHAW'S COUNTERCLAIMS AGAINST ADEIA

Defendants and Counterclaim-Plaintiffs Shaw Cablesystems G.P. (n/k/a Shaw Cablesystems Inc.) ("Shaw Cable") and Shaw Satellite G.P. (n/k/a Shaw Satellite Services Inc.) ("Shaw Direct®") (collectively, "Shaw"), by and through their undersigned counsel, upon knowledge as to their own actions and otherwise upon information and belief, assert the following counterclaims against Plaintiffs and Counterclaim-Defendants Adeia Guides Inc., Adeia Media Solutions Inc., and Adeia Media Holdings LLC's (collectively, "Adeia").

## NATURE OF THE CASE

1. In this action, Adeia alleges that it is entitled to collect royalties pursuant to the Interactive Program Guide Agreement ("IPG Agreement") even though Adeia failed to perform material contractual obligations and even after material representations, warranties, and covenants provided by Adeia to induce Shaw to enter into the IPG Agreement have failed. Shaw brings these counterclaims to redress Adeia's material breaches and to obtain a declaration confirming that Shaw properly terminated the IPG Agreement and has no further obligations pursuant to the IPG Agreement.

## PARTIES

2. On information and belief, Adeia Guides Inc. (formerly known as Rovi Guides, Inc.) is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 3025 Orchard Parkway, San Jose, California.

3. On information and belief, Adeia Media Solutions Inc. (formerly known as TiVo Solutions Inc.) is a corporation organized and existing under the laws of the State of Delaware and having its principal place of business at 3025 Orchard Parkway, San Jose, California.

4. On information and belief, Adeia Media Holdings LLC (formerly known as TiVo Corporation) is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business at 3025 Orchard Parkway, San Jose, California.

5. Shaw Cable is a corporation organized and existing under the laws of Alberta with its principal place of business at Suite 900, 630– 3rd Avenue S.W., Calgary, AB, T2P 4L4, Canada.

6. Shaw Direct® is a corporation organized and existing under the laws of Alberta with its principal place of business at Suite 900, 630– 3rd Avenue S.W., Calgary, AB, T2P 4L4, Canada.

## JURISDICTION AND VENUE

7. This Court may exercise personal jurisdiction over Adeia because Adeia filed suit against Shaw in this judicial district and therefore consented to personal jurisdiction and venue in this judicial district in connection with any causes of action arising from the same set of operative facts as the underlying action.

8. This Court also may exercise personal jurisdiction over Adeia because Adeia consented to personal jurisdiction in this Court pursuant to Section 9.4 of the IPG Agreement:

"███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." Shaw's counterclaims fall squarely within the scope of this provision.

9. The Court has subject matter jurisdiction over Shaw's counterclaims pursuant to 28 U.S.C. § 1332. Specifically, each of Shaw Cable and Shaw Direct® are citizens of the foreign state of Canada and, upon information and belief, Adeia is a citizen of California, and the amount in controversy between the parties exceeds $75,000 exclusive of interest and costs.

11

10. The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1367(a). Specifically, Shaw's counterclaims for breach of contract and declaratory judgment are so related to Adeia's claim for breach of contract that the counterclaims form part of the same case or controversy.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS

11. In April 2014, Shaw entered into the IPG Agreement with Rovi Guides, Inc. (now known as Adeia Guides Inc.) (*see* Ex. A to ECF No. 1). The agreement was amended twice: first to add mobile/online platforms, among other changes ("Amendment One") and later to extend its term to December 31, 2025 and add as additional licensors TiVo Solutions Inc. (now known as Adeia Media Solutions Inc.) and TiVo Corporation (now known as Adeia Media Holdings LLC) ("Amendment Two") (all collectively referred to herein as the "IPG Agreement") (*see id.*).

12. Under the IPG Agreement, Adeia agreed to license various "███████" and "███████" (collectively, the "Adeia Patents") to Shaw for use in connection with the interactive program guides ("IPGs") that Shaw provided to its customers (*i.e.*, interactive functionality by which Shaw users can access television programming and other information on their televisions) "███████████████████" on Shaw's cable and satellite television platforms. Ex. A at 4 to ECF No. 1.

13. Schedule A to the IPG Agreement provides a non-exhaustive list of Adeia Patents that may be applicable to Shaw's IPGs.

14. Section 3.1 of the IPG Agreement states that "████████████████████████████████████████████████████████████████████████████████."

12

15. In exchange for rights to use the Adeia Patents on Shaw's platforms, Shaw was ███████████████████████ as set out in Schedule B to the IPG Agreement.

16. Section 3.2 of the IPG Agreement allows a party to terminate the IPG Agreement prior to the expiration of the term if "███████████████████████████████████████████████████████████████████████████████████."

17. In Section 7.2 of the IPG Agreement, Adeia "███████████████████████████" to Shaw that Adeia "███████████████████████████████."

18. Section 3.3 of the IPG Agreement allows Shaw to terminate the IPG Agreement prior to the expiration of the term if "█████████████████████████████████████████████████████████████████████████████████████████████████████."

19. By 2022, two Canadian trial courts—*Rovi Guides, Inc. v. Bell Canada*, 2022 FC 1388 and *Rovi Guides, Inc. v. Videotron Ltd.*, 2022 FC 874—found that the asserted claims of six Adeia Patents are invalid.

20. Adeia subsequently appealed the finding of invalidity as to three of those patents but expressly disclaimed its right to appeal the finding of invalidity as to the remaining three. *See* Rovi's Memorandum of Fact and Law, dated June 2, 2023, *Rovi Guides, Inc. v. Bell Canada*, 2022 FC 1388, n.2 (disclaiming appeal as to claims asserted for the 482 Patent and 629 Patent) ("*Bell Canada*"); Rovi's Memorandum of Fact and Law, dated January 30, 2023, *Rovi Guides, Inc. v. Videotron Ltd.*, 2022 FC 874, n.1 (disclaiming appeal as to claims asserted for the 061 Patent and 629 Patent) ("*Videotron*"). Therefore, the *Bell Canada* and *Videotron* rulings became final and non-appealable as to those three patents for which no appeal was pursued.

21. On August 6, 2024, the Canadian Federal Court of Appeal affirmed the Federal Court's ruling that the asserted claims of the remaining three patents are invalid. *See Rovi Guides, Inc. and Tivo Sols. Inc. v. Telus Corporation, Telus Commc'ns Inc., Telus Commc'ns Co., and Bell Canada*, 2024 FCA 126, at 48; *Rovi Guides, Inc. v. Videotron Ltd.*, 2024 FCA 125 at 56.

22. Separately, by 2023, a material number of the patents listed on Schedule A to the IPG Agreement had lapsed, expired, or had been abandoned.

23. Despite these developments, and notwithstanding its obligations to do so pursuant to Section 3.1 of the IPG Agreement, Adeia has never ███████████████████████████████████████████████████████████████████████████████████████████████.

24. By letter dated June 12, 2023, Shaw exercised its right to formally terminate the IPG Agreement pursuant to Sections 3.2 and 3.3. *See* **Exhibit 1**.

25. Pursuant to Section 3.5 of the IPG Agreement, ███████████████████████████████████████████████████████████████████████.

26. Adeia has not alleged that Shaw uses the Adeia Patents in connection with any IPG, nor has Adeia ever disputed Shaw's contention that its IPGs do not use technology protected by an Adeia Patent.

27. Adeia has also never disputed that the three patents invalidated by *Bell Canada* and *Videotron* are patents that apply to Shaw's IPGs.

## CAUSES OF ACTION

### COUNT I

**(Breach of Contract - Representations and Warranties)**

28. Shaw hereby realleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

14

29. At all relevant times, the IPG Agreement was a valid and enforceable contract between Adeia and Shaw.

30. Since the parties entered into the IPG Agreement, Shaw has performed all of its obligations under the IPG Agreement, and all conditions required for Adeia's performance under the Agreement have been satisfied.

31. Pursuant to Section 7.2 of the IPG Agreement, Adeia "███████████ ███████████" to Shaw that Adeia "███████████████████████████████████████."

32. Pursuant to Section 3.2 of the IPG Agreement, Adeia materially breached the IPG Agreement ███████████████████████████████████ it provided pursuant to Section 7.2 that Adeia "███████████████████████████████."

33. Since 2022, at least six Adeia Patents have been found to be invalid or unenforceable by Canadian courts. Adeia affirmatively chose not to appeal the finding of invalidity as to three of those patents, making the rulings as to those patents final and non-appealable. And in 2024, the Canadian Federal Court of Appeal affirmed the finding of invalidity as to the remainder of the patents.

34. Separately, since at least 2023, a material number of patents set out in Schedule A to the IPG Agreement have now lapsed, expired, or have been abandoned.

35. "███████████" are defined as "███████████████████████████████████████████████████████████████████████████████████." Adeia's ███████████████████████████████—which directly incorporates patents that Adeia ███████ ███████████████████████████—is not limited to the time of contracting (*i.e.*, April 1, 2014), but is instead an ongoing promise that Adeia will have the right to license the patents for which it charges royalties.

15

36. Pursuant to Section 3.2, Adeia ███████████████████████████████████████████.

37. Since the commencement of the instant action, Adeia ██████████████████████████████████████████████████████████████████████.

38. The value and essential purpose of the IPG Agreement depends on Adeia maintaining the ability to license patents covering IPGs during the term.

39. As a direct and proximate result of Adeia's actions, Shaw has suffered damages, in an amount to be proven at trial, including, without limitation, the inability to receive the benefit of its bargain and in royalty payment amounts that were paid to Adeia following the dates on which these patents have lapsed, expired, have been abandoned, or were held invalid.

## COUNT II

**(Breach of Contract - Failing to Provide Updated Schedule A)**

40. Shaw hereby realleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

41. At all relevant times, the IPG Agreement was a valid and enforceable contract between Adeia and Shaw.

42. Since the parties entered into the IPG Agreement, Shaw has performed all of its obligations under the IPG Agreement, and all conditions required for Adeia's performance under the Agreement have been satisfied.

43. Section 3.1 of the IPG Agreement states that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

44. This obligation is designed to ensure transparency and accuracy regarding the scope and value of the patent portfolio that is the subject of the license.

45. Adeia breached Section 3.1 by ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ .

46. The value and essential purpose of the IPG Agreement depends on Adeia maintaining the ability to license patents covering IPGs during the term.

47. Adeia's breach deprived Shaw of bargained-for disclosures material to the scope of licensed rights and the associated fees, which impeded Shaw's ability to accurately assess portfolio coverage and value.

48. As a direct and proximate result of Adeia's actions, Shaw has suffered damages, in an amount to be proven at trial, including, without limitation, the inability to receive the benefit of its bargain and in royalty payment amounts that were paid to Adeia following the dates on which these patents lapsed, expired, or have been abandoned.

## COUNT III

**(Declaratory Relief - Shaw Properly Terminated the IPG Agreement)**

49. Shaw hereby realleges and incorporates by reference the foregoing paragraphs as if fully stated herein.

50. An actual controversy has arisen and now exists between Shaw and Adeia regarding whether Shaw lawfully terminated the IPG Agreement. Shaw asserts that it has lawfully terminated the IPG Agreement and is not obligated to pay any additional license fees. Adeia asserts that Shaw owes license fees for the full term of the IPG Agreement.

51.     Accordingly, Shaw requests a judicial declaration that Shaw lawfully terminated the IPG Agreement and is not obligated to pay additional license fees since the time of the lawful termination.

## PRAYER FOR RELIEF

WHEREFORE, Shaw prays for entry of judgment against Adeia as follows:

a) Judgment in favor of Shaw and against Adeia on each counterclaim;

b) Damages in an amount to be proven at trial, plus pre-judgment interest, attorneys' fees, and costs;

c) A declaration that Shaw lawfully terminated the IPG Agreement and is not obligated to pay additional license fees from and after the date of its lawful termination;

d) Such other and further relief as this Court deems just and proper.

Dated: October 14, 2025                    Respectfully submitted,

By: */s/ Henninger S. Bullock*
    Henninger S. Bullock
    Richard A. Spehr
    Victoria Lowry
    MAYER BROWN LLP
    1221 Avenue of the Americas
    New York, NY 10020
    Telephone: (212) 506-2500
    Fax: (212) 262-1910
    HBullock@mayerbrown.com
    RSpehr@mayerbrown.com
    VBell@mayerbrown.com

*Attorneys for Defendants/Counterclaim-Plaintiffs Shaw Cablesystems G.P. and Shaw Satellite G.P.*